CASSIDY v. SILVER KING COALITION MINES CO.

(Circuit Court of Appeals, Eighth Circuit. August 15, 1912.)

No. 3,708.

1. MINES AND MINERALS (§ 43*)—PATENT FOR MINING CLAIM—RELATION TO DATE OF FINAL RECEIPT—EFFECT OF INTERMEDIATE CONVEYANCE.

    Two of the four locators of a mining claim, after doing all the assessment work thereon for two years, took steps to forfeit the rights of their co-owners therein by notice. Thereafter they applied for and obtained a patent in their own names, but after final receipt and before issuance of the patent sold and conveyed the claim by deed. *Held*, that the patent, when issued, became operative by relation from the date of final receipt, and their conveyance passed the legal title and divested them of all interest; that, conceding that they did not legally extinguish the interest of one of their co-owners, but took title to his share in trust, the trusteeship passed to their grantees, and they could not thereafter convey it to him or to another.

    [Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 125–129; Dec. Dig. § 43.*]

2. MINES AND MINERALS (§ 38*)—SUIT TO RECOVER EQUITABLE INTEREST IN MINING CLAIM—LACHES.

    Where an attempt was made by his co-owners to forfeit the interest of one of the locators of a mining claim for failure to contribute to the assessment work, and the claim was afterward patented to the other owners, who sold and conveyed the same, a delay of 25 years by such part owner after the location of the claim, and 12 years after the patent was recorded, before asserting any right therein, was such laches as will bar his right to maintain a suit in equity to recover an interest therein.

    [Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 87½–113; Dec. Dig. § 38.*]

Appeal from the Circuit Court of the United States for the District of Utah.

Suit in equity by Charlotte Cassidy against the Silver King Coalition Mines Company. Decree for defendant, and complainant appeals. Affirmed.

John A. Shelton, for appellant.

Dickson, Ellis, Ellis & Schulder and A. C. Ellis, Jr. (W. H. Dickson and Russell G. Schulder, of counsel), for appellee.

Before ADAMS and SMITH, Circuit Judges, and WILLARD, District Judge.

WILLARD, District Judge. This is a suit, brought in 1910, by Charlotte Cassidy, widow and heir of James P. Cassidy, to quiet her title to an undivided quarter of the Captain mining claim, located on April 6, 1881, in the names of E. P. Cassidy, Timothy Madden, Andrew Lundin, and Peter Anderson; it being claimed that James P. Cassidy was E. P. Cassidy, one of the locators. The mine is situated in Park City, Summit county, Utah. After proceedings by Lundin and Anderson to forfeit the interest of Madden and *John* Cassidy, Lundin and Olson, the mother of Anderson, and who had succeeded to his rights, applied in 1895 for a patent.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

They paid for the claim, and a final receipt was issued by the receiver of the land office on December 27, 1895. The patent was issued on May 21, 1896.

On January 20, 1896, a deed for the Captain claim was filed in the recorder's office of Summit county, executed by Lundin and Olson in favor of David Keith and Thomas Kearns. This registration was after the issuance of the final receipt. The deed, however bore the date of December 21, 1895, which was before the issuance of such receipt. But it appeared from the instrument itself that it was not acknowledged until January 15, 1896, and the undisputed parol testimony showed that it was not delivered until after it was acknowledged. This evidence overcomes any prima facie presumption that the deed took effect on the day of its date. It did not in fact take effect until after Lundin and Olson had bought the claim and had obtained the final receipt. By subsequent conveyances the defendant has succeeded to all the rights of Keith and Kearns.

Nearly 14 years afterwards and on September 8, 1909, James P. Cassidy procured a quitclaim deed from Lundin for the whole claim, and by judicial proceedings against the heirs of Olson, which culminated in a decree dated May 29, 1910, it is claimed that he procured a conveyance from said heirs of an undivided one-eighth.

In a suit prior to the present one, and brought against the same defendant, commenced by James P. Cassidy in December, 1908, and therefore before he obtained the conveyances just mentioned, he claimed that the defendant held the title to a quarter interest of the claim in trust for him, and asked for a conveyance, thus setting up an equitable title. In the present case, however, the plaintiff strongly insists that her claim is legal, and not equitable; that she shows a patent from the United States to Olson and Lundin, and a legal conveyance from Lundin, and from the heirs of Olson of an undivided one-fourth of the property. The fact that the case appears on the equity side of the court counsel explains by referring to a statute of Utah, which authorizes the owner of vacant and unoccupied property to maintain an action against a person setting up an adverse claim thereto for the purpose of having such claim determined, and by saying that the remedy afforded by that statute can be enforced upon the equity side of the federal court. If, however, it should turn out that she has no legal title, but only an equitable one, the same laches which defeated her husband in the former suit will now defeat her here.

For the purpose of the discussion we assume that James P. Cassidy is the E. P. Cassidy named as one of the locators, although that is not altogether clear from the evidence. We assume, also, that the forfeiture proceedings against John Cassidy were not sufficient to determine the interest of James P. Cassidy.

[1] The deed from Lundin and Olson to Keith and Kearns, upon which the defendant's title rests, was in substance as follows:

"Witnesseth, that the said parties of the first part, for and in consideration of the sum of twenty-five hundred dollars, lawful money of the United

States of America, to them in hand paid by said party of the second part, the receipt whereof is hereby acknowledged, have granted, bargained, sold, remised, released, and forever quitclaimed, and by these presents do grant, bargain, sell, remise, release, and forever quitclaim, unto the said parties of the second part, and to their heirs and assigns, forever, all the right, title, and interest, estate, claim, and demand, both in law and equity, as well in possession as in expectancy, of the said parties of the first part, of, in, or to that certain portion, claim, and mining right, title, or property on that certain vein or lode of rock, containing precious metals of gold, silver, and other metals, and situate in the Uintah mining district, Summit county, Utah, and described as follows, to wit: All of the Captain lode mining claim and all of the Uintah lode mining claim, as surveyed for patent and described in field notes and plat of the official survey on file in the United States land office, at Salt Lake City, Utah. Together with all the metals, ores, gold and silver bearing quartz, rock, and earth therein, and all the rights, privileges, and franchises thereto incident, attendant, and appurtenant, or therewith usually had and enjoyed, and also all and singular the tenements, hereditaments, and appurtenances thereto belonging, and the rents, issues, and profits thereof, and also all the estate, right, title, interest, possession, claim, and demand whatsoever of the said parties of the first part of, in, or to the premises, and every part and parcel thereof. To have and to hold, all and singular, the premises, with the appurtenances and privileges thereto incident, unto the said parties of the second part. And the parties of the first part, for their heirs, do hereby agree to and with the party of the second part that they have full right and power to sell and convey the said premises, and that the said premises are now free and clear from all incumbrances, sales, or mortgages made or suffered by the said parties of the first part."

What did that deed convey? Although the patent was not issued until 1896, and after the deed was delivered, yet when the patent did issue it became operative as of the date of the final receipt, which was before the deed was delivered. U. S. v. Detroit Lumber Co., 200 U. S. 321, 335, 26 Sup. Ct. 282, 50 L. Ed. 499; Benson Mining Co. v. Alta Mining Co., 145 U. S. 428, 12 Sup. Ct. 877, 36 L. Ed. 762. The case must be considered, then, as if the patent had been issued on December 27, 1895. As will be seen hereafter, there is nothing inequitable in applying the doctrine of relation announced in these cases to this suit.

It is certain that, when the United States issued the patent, it passed to the grantees therein all the interest which the government had in the land. After it was issued the United States held nothing, either for itself or in trust for Cassidy. If a trust relation had existed before between the government and Cassidy, the trusteeship passed from it by this conveyance. After the patent, if any one held the interest of Cassidy in trust, it must have been Lundin and Olson. It being considered that the patent was issued on December 27, 1895, Lundin and Olson after that date were, upon the theory most favorable to the plaintiff, trustees for Cassidy. In January, 1896, they conveyed by the deed above quoted to Keith and Kearns. It is plain that after that deed they retained no interest of any kind in the property. No construction of the deed is permissible which would transfer to Keith and Kearns three-quarters of the land, and retain the other quarter in Lundin and Olson in trust for Cassidy. As the United States by its patent severed its relations with Cassidy, and cast them on Lundin and Olson, so Lundin and Olson by their deed severed any trust re-

lations which they might have had with Cassidy, and cast them upon Keith and Kearns. After that deed neither Lundin nor Olson was a trustee for Cassidy; neither one had any interest of any kind in the land. So that when, nearly 15 years afterwards, Lundin undertook to quitclaim the property to Cassidy, nothing passed by his deed, for he had nothing to convey. The same thing is true of the judicial conveyance from the heirs of Olson. Nothing passed by that conveyance, because those heirs had nothing to convey.

[2] The case then stands as it would stand, had no deed ever been made by Lundin to Cassidy, or no conveyance made to him from the heirs of Olson. Thus standing, plaintiff now appears with only an equitable title. To the enforcement of that equitable title the laches of the plaintiff and her husband is a complete bar. Plaintiff's counsel seems to be of that opinion, for he says in his brief, on page 9:

"If James P. Cassidy was, on the 21st day of December, 1895, the owner of a one-quarter interest in the Captain lode claim, and if, by the issuance of the patent on May 21, 1896, the Silver King Mining Company was vested with the legal title as to such one-quarter interest, which was held in trust by it for the said Cassidy, then there might be some question as to whether or not the complainant's suit should not be held to be barred. Under the state of facts assumed, the Silver King Mining Company and its successor, the Silver King Coalition Mines Company, would be the trustee of a constructive trust; and if the suit had been one to declare and enforce such trust, such suit, according to some of the authorities, might (if the trustee denied the existence of the trust and objected on account of the delay to the maintenance of the suit) properly be held to have become barred, even though the trust relation was clearly proved, and there had been no previous repudiation of the trust by the trustee. In a suit brought by the holder of the equitable title against one who held the legal title, for the purpose of quieting his title, the same rule would possibly apply."

To show what the plaintiff and her husband knew, or ought to have known, for the 20 or 25 years during which they remained silent and inactive, it may be well to refer to some of the facts which appear in the case. In an affidavit made since litigation over this claim arose, plaintiff swore to a complaint which stated that James P. Cassidy left Utah on December 15, 1882, and became a resident of Montana, where he resided until his death on December 16, 1909. There is no competent evidence to show that he ever returned to Utah. On September 6, 1884, Lundin and Anderson gave notice to Tim Madden and John Cassidy that they had performed the assessment work of Madden and Cassidy on the Captain claim for 1882 and 1883. This notice was given for the purpose of forfeiting their interest. It was published for 12 weeks in a newspaper at Park City. The notice and proof of publication were filed in the recorder's office for Summit county on August 19, 1886. No part of the sum due for this assessment work was ever paid by any one. On December 24, 1894, Anderson, Lundin, and Olson gave notice of their intention, as co-owners of the claim, to hold and work it after 1894. This notice was filed in the local office on December 29, 1894. On October 9, 1895, Lundin

and Olson made application for a patent. In the application they stated that they were the sole owners of the claim. They attached copies of the forfeiture notices against Madden and John Cassidy, and an affidavit that E. P. Cassidy was John Cassidy. Notice of this application for a patent was posted on the claim, and it remained there for more than two months. It was published for ten weeks in a newspaper at Park City. The defendant and its grantors paid all the taxes upon the property from 1897 to 1910.

The first step which Cassidy took to assert his rights, so far as the evidence shows, was the commencement of a suit against the defendant on December 1, 1908. For more than 25 years he made no effort to find out what had become of his interest in the Captain claim. He was a miner, and must have known of the laws and regulations which required yearly labor in order to preserve his interest. He must have known that, if the claim had not been entirely abandoned, some of his companions must have done the assessment work which he ought to have done. The records of Summit county contained papers showing the attempted forfeiture of his rights. The most casual inspection of those records after August 19, 1886, would have disclosed this fact. A simple letter of inquiry to the local United States land office at any time after 1895 would have told him that he should move promptly if he desired to assert his claim, yet for more than 12 years after this date he did nothing and said nothing. The officers of the defendant company never heard of his claim until he commenced his first suit in December, 1908. Under the circumstances of this case, no cause of action which he may have had, whatever it may be called, can survive after such delay.

The decree of the court below is affirmed, with costs.